| | |
|---|---|
| Kirsten A. Milton | Kathleen C. Shea |
| Nevada State Bar No. 14401 | Florida State Bar No. 0102837 |
| **JACKSON LEWIS P.C.** | **JACKSON LEWIS P.C.** |
| 300 S. Fourth Street, Suite 900 | 390 N. Orange Avenue, Suite 1285 |
| Las Vegas, Nevada 89101 | Orlando Florida 32801 |
| Tel: (702) 921-2460 | Tel: (407) 246-8404 |
| Fax: (702) 921-2461 | Fax: (407) 246-8441 |
| kirsten.milton@jacksonlewis.com | kathleen.shea@jacksonlewis.com |
| | *Appearing Pro Hac Vice* |

Attorneys for Defendants
*Wyndham Vacation Ownership, Inc.*
*and Demetrius Barnes-Vaughn*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CHRISTINA JORDAN,<br>　　　　Plaintiff,<br>　　vs.<br>WYNDHAM VACATION OWNERSHIP, INC., a Nevada corporation; DEMETRIUS BARNES, an individual; DOES I through X, inclusive; and ROE BUSINESS ENTITIES, I through X, inclusive<br>　　　　Defendants. | **Consolidated for Discovery**<br>**Case No. 2:21-cv-02228-CDS-NJK**<br><br>**DEFENDANTS' MOTION TO COMPEL MENTAL EXAMINATION OF PLAINTIFF WENDY REGGE** |
| WENDY REGGE,<br>　　　　Plaintiff,<br>　　vs.<br>WYNDHAM VACATION OWNERSHIP, INC., *et al.*,<br>　　　　Defendants. | Case No. 2:21-cv-02235-JCM-EJY |
| RENEE DEAN,<br>　　　　Plaintiff,<br>　　vs.<br>WYNDHAM VACATION OWNERSHIP, INC., *et al.*,<br>　　　　Defendants. | Case No. 2:22-cv-00141-GMN-NJK |

Defendants Wyndham Vacation Ownership, Inc. ("Wyndham") and Demetrius Barnes-Vaughn ("Barnes-Vaughn"), (collectively "Defendants"), by and through their counsel of record, Jackson Lewis, P.C., hereby request this Court enter an order compelling Plaintiff to attend a Fed. R. Civ. P. 35 psychological examination before defense expert JoAnn Behrman-Lippert, Ph.D. ("Dr. Lippert"), who will rebut anticipated testimony about Plaintiff's mental health condition by her own treating providers. The Motion is based on the following Memorandum of Points and

Authorities, all pleadings and documents on file with the Court, and any oral argument that the Court deems proper.

## **MEMORANDUM AND POINTS OF AUTHORITIES**

### **I.    INTRODUCTION**

Defendants have been forced to bring this motion to compel because Plaintiff has taken the position that Dr. Lippert "should" be a primary expert, not a rebuttal witness.[1] As explained below, Plaintiff is making a claim for Intentional Infliction of Emotional Distress ("IIED") and has alleged $250,000 in emotional distress damages. Defendants attempted to obtain information and documents related to Plaintiff's alleged mental condition through interrogatories and requests for production. In response to Wyndham's discovery requests, Plaintiff produced *no documents* related to her mental condition and refused to execute a proposed medical record authorization (even though, as Plaintiff later admitted, Defendants were entitled to an executed medical authorization). On June 8, 2023, Defendants sent Plaintiff revised medical authorizations, upon her request, and Plaintiff responded on June 21, 2023 with her revisions. Defendants sent the finalized medical authorizations to Plaintiff on July 6, 2023.

On July 10, 2023, the Parties had a teleconference to discuss the status of discovery. During the call, Defendants advised that they could not depose Plaintiff until they received a complete set of records and since Plaintiff had not signed the authorizations, Defendants still did not have the records necessary. Wyndham then suggested shifting the discovery deadlines back. Counsel for Plaintiff responded that Plaintiff would produce her medical records on July 12, 2023, the Parties' initial expert disclosure deadline, and requested the Parties resume discussions about discovery deadlines and whether Plaintiff needed to sign authorizations for records after Defendants reviewed Plaintiff's expert disclosures. Plaintiff's counsel also indicated that Plaintiff would sign the medical authorizations *after* the July 12, 2023 initial expert disclosure deadline.  Plaintiff's antics seemed to be a means to prevent Defendants from identifying an expert to conduct their own exam.

---

[1] Defendant believes Plaintiff's argument about Dr. Lippert's report – which does not yet exist because she has not yet examined Plaintiff due to her unwarranted objections – is more appropriate as a Motion in Limine.

On July 12, 2023, Plaintiff served Defendants with her expert disclosure, which consisted of sixteen (16) treating providers, twelve (12) of whom were not previously identified, who will allegedly provide testimony about Plaintiff's medical condition. Plaintiff also designated ten (10) of those treating providers as witnesses who would opine that Defendants' conduct actions contributed to Plaintiff's injuries, including substance abuse, depression, and suicidal ideation. Additionally, Plaintiff produced **2,600** pages of medical records that related to her mental condition. When the Parties reconvened to discuss discovery deadlines on July 21, 2023, Defendants explained that Plaintiff's delayed production of her medical records prejudiced Defendants because they must "review a massive number of documents, interpret them, and determine whether they wish to retain an expert." Defendants also explained that it needed additional time to depose Plaintiff and potentially disclose an expert.

The Parties ultimately agreed to extend deadlines and submitted a Stipulation and Order to Extend Discovery Deadlines to the Court. The *agreed upon* stipulation stated, *"Plaintiffs Jordan and Regge recently served their Expert Witness Disclosures on July 12, 2023 that included a total of about 2,800[2] new documents that Defendants need to review prior to taking Plaintiffs' depositions and evaluating what, if any, rebuttal expert witnesses they will disclose."* After this Court entered the Order Granting the Stipulation, Defendants promptly reviewed Plaintiff's medical records and deposed her on September 13, 2023. When Plaintiff's deposition did not conclude on September 13, 2023, the Parties filed another Stipulation and Order to Extend Discovery Deadlines, which the Court granted on October 19, 2023, and extended the rebuttal expert witness disclosure deadline to December 13, 2023. Immediately after Plaintiff's deposition concluded on October 25, 2023, Defendants informed Plaintiff's counsel that they would request Plaintiff submit to a Rule 35 exam by Dr. Lippert. Defendants provided Plaintiff with a draft stipulation for a Rule 35 exam on October 27, 2023, which outlined the scope of the proposed examination.

---

[2] This number includes the approximately 200 pages of medical records Plaintiff Christina Jordan produced with her Expert Disclosure.

Even though Defendants can demonstrate good cause for a Rule 35 exam and Plaintiff has clearly placed her mental health in controversy by filing an IIED claim, Plaintiff objects to a Rule 35 exam because she believes Dr. Lippert is not a rebuttal witness and should have been identified before Plaintiff produced any of her medical records or identified sixteen (16) doctors who would testify on her behalf as alleged experts. Plaintiff's argument fails because Dr. Lippert's report will contradict and rebut evidence on the same subject matter identified by Plaintiff's experts. Defendants could not have identified the need for an expert, the type of expert to retain or what an expert may need to review until after Plaintiff produced her expert disclosures and her medical records. Last, even if the Court determines Defendants could have disclosed Dr. Lippert earlier, which Defendants deny, Defendant can show that its disclosure of Dr. Lippert at this time was substantially justified and harmless. Defendants respectfully request this Court grant the Motion to Compel and require Plaintiff undergo a Rule 35 examination.

## II.    RELEVANT PROCEDURAL AND FACTUAL HISTORY

### A. Plaintiff's Complaint and Amended Complaint

On December 22, 2021, Plaintiff filed her original Complaint alleging five causes of action against Wyndham and/or individual Defendant Barnes-Vaughn. ECF No. 26. Specifically, Plaintiff alleges (1) Barnes-Vaughn sexually harassed her and Wyndham and Barnes-Vaughn subjected her to discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and Nevada state law; (2) Wyndham failed to provide her with requested leave as a reasonable accommodation in violation of the Americans with Disabilities Act ("ADA"); (3) Wyndham retaliated against her by denying the request for leave and terminating her employment in violation of the ADA; (4) Wyndham retaliated against her and interfered with her rights under the Family and Medical Leave Act ("FMLA"); and (5) Defendants subjected her to IIED based on their alleged violation of Title VII, the ADA, and the FMLA. *Id.* On April 10, 2023, Plaintiff filed her First Amended Complaint, ECF No. 70, where she added a sixth count against Wyndham, claiming that it negligently hired, supervised, retained, and/or trained Barnes-Vaughn.

In her Amended Complaint, Plaintiff alleges that she "suffered significant mental and emotional distress due to the hostile work environment at Wyndham." ECF No. 70 at ¶ 56. She

claims that she was "extremely embarrassed and uncomfortable" when Defendant Barnes-Vaughn initiated sexual texts and video calls, and that she experienced "severe stress and anxiety" because Defendant Barnes-Vaughn forced her to perform sexual acts. *Id.* At ¶¶ 57-58. Plaintiff further alleges that she suffered a relapse of her medical condition because of the alleged stress and anxiety. *Id.* At ¶ 59. Plaintiff's Amended Complaint also states, "Defendants intended to cause emotional distress to [Plaintiff] or acted with reckless disregard of causing her emotional distress." ECF No. 70 at ¶ 123. Plaintiff claims that she "suffered severe or extreme emotional distress as a result of Defendants' conduct including, but not limited to, severe or extreme emotional pain and suffering, inconvenience, mental anguish, and lost enjoyment of life." *Id.* At ¶ 124.

### B. Plaintiff's Discovery Responses and First Supplemental Disclosure

On February 6, 2023, Wyndham served Plaintiff with initial discovery requests so that it could obtain information about her claims, including her IIED claim, alleged emotional distress, and any relevant medical and mental health treatment. In its First Interrogatories to Plaintiff, Wyndham requested that Plaintiff identify health care providers from whom she sought or received diagnosis, treatment, or care of any kind, that in any way or manner whatsoever relates to any damages as alleged in her Complaint. **Exhibit 1** (Plaintiff's Response to Interrogatory No. 9). Wyndham also requested Plaintiff to execute an authorization so that it could obtain Plaintiff's medical records. **Exhibit 2** (Plaintiff's Response to Request for Production No. 1).

Plaintiff served Wyndham with her responses on April 3, 2023. She disclosed *six* individual health care providers: Saba Chatoor, M.S., LCPC-I; Maria Magtoto, RN; Michael S. Levy, DO; Carlie Thompson, PA-C, PA; Maria Manalo, M.D.; and Chrystal C. Taylor, PA-C, but did not produce any medical records. *See* **Exhibit 1.** Plaintiff also objected to the execution of medical record authorizations that would allow Defendants to obtain her medical records.

On April 4, 2023, Plaintiff served Defendants with her First Supplement to Initial Disclosure, which identified the same individual health care providers in her Answers to Interrogatories, except for Michael S. Levy, DO, and indicated she is seeking $250,000 in emotional distress damages. **Exhibit 3**, Sections I and III. According to Plaintiff's First Supplement to Initial Disclosures, the treating providers had discoverable information about some or all of the

following topics: the facts and circumstances related to all treatment and/or services provided to Plaintiff; the facts and circumstances related to all referrals or recommendations for additional treatment or services for Plaintiff; the reasonableness and necessity of all treatment or services provided to or recommended for Plaintiff; and the reasonableness of the cost of any services and/or treatment provided to Plaintiff. The First Supplement to Initial Disclosures did not state that these treating providers would opine about the causation of Plaintiff's emotional distress and provided no specific information about their opinions or the conditions for which they provided treatment. *Id*.

### C. Plaintiff's Expert Disclosure and Second Supplement to Initial Disclosure

On April 10, 2023, the Court entered an Order Granting Stipulation to Extend Discovery Deadlines, ECF No. 65, and extended the Parties' initial expert disclosure deadline to July 12, 2023, and rebuttal expert disclosure deadline to August 14, 2023. On June 8, 2023, Defendants sent Plaintiff, at her request, revised medical record authorizations. Plaintiff responded on June 21, 2023 with her proposed revisions, and Defendants sent the finalized versions to Plaintiff on July 6, 2023.

On July 10, 2023, the Parties had a teleconference to discuss the status of discovery. Defendants advised that they could not depose Plaintiff until they received a complete set of her medical records, then suggested the Parties ask the Court to extend discovery deadlines. Plaintiff's counsel responded that Plaintiff would disclose her medical records on July 12, 2023, the same date as the Parties' initial expert disclosure deadline, and that the Parties should table the discussion about discovery extensions until Defendants had an opportunity to review Plaintiff's expert disclosure and medical records. Plaintiff's counsel also indicated that she would ask Plaintiff to execute medical authorizations after July 12, 2023, if, after reviewing Plaintiff's medical records, Defendants felt that Plaintiff's records were incomplete. **Exhibit 10** at ¶¶ **5-6**. Plaintiff's counsel sent an email later that day which reiterated that Defendants should reach back out to Plaintiff to "talk about discovery and depositions and such" after they had a chance to review Plaintiff's expert disclosure and discovery supplements. **Exhibit 4**; **Exhibit 10** at ¶ 7. The email also stated, "[r]ebuttal expert disclosures are currently set for August 14, 2023, so we should have until Monday, July 24, 2023 to submit a stip without running afoul of the 21 day rule." *Id*.

On July 12, 2023, Plaintiff served Defendants with her initial expert disclosure which identified *sixteen* (16) treating providers. **Exhibit 5**. Twelve (12) of the treating providers were not previously identified in any of Plaintiff's prior discovery responses: Reza Goravanchi, MD; Ronald Dampog, APRN; Thomas Yee, MD; Praveen Saran, MD, MPH, FASAM; Jerome Nwokike, MD; John J. Kim, MD; Ali Haq, MD; Itamar Goldstein, MD; Stephen Disabatino, MD; Ryan Nokes, PA-C; Allen Park, PA-C; Lisa Vancil, LCSW. *Id.* Additionally, Plaintiff's expert disclosure noted that ten (10) providers would testify regarding the *causation* of Plaintiff's emotional distress, namely that Defendants' actions contributed to Plaintiff's injuries, including substance abuse, depression, and suicidal ideation. *Id.* Plaintiff also served Defendants with her Second Supplement to Initial Disclosure, which identified the medical providers in Plaintiff's expert disclosure, along with nearly *2,600 pages* of Plaintiff's medical records. **Exhibit 6**. Defendants were surprised by the number of documents Plaintiff disclosed, particularly since it was clear from the documents that Plaintiff had been in possession of the documents since at least April 2023 and could have produced them earlier. Defendants requested a follow up call with Plaintiff's counsel.

On July 20, 2023, Defendants' counsel suggested that the Parties file a proposed stipulation to extend the case management schedule. *See* **Exhibit 4**; **Exhibit 10** at ¶ 9. Defendants' counsel explained that Plaintiff did not disclose any retained experts and was therefore "particularly disappointed that [Plaintiff] had thousands of pages of medical records in [her] possession since April 2023 and waited until July 12 to produce these files." Defendants' counsel further stated that Plaintiff's delayed production prejudiced Defendants and they needed additional time to "review a massive number of documents, interpret them, and determine whether they wish to retain an expert." *Id.*

On July 24, 2023, the Parties submitted a Stipulation and Order to Extend Discovery Deadlines (Second Request), which this Court granted on July 25, 2023. ECF No. 89. Section III of the agreed-upon stipulation and order stated, "Plaintiffs Jordan and Regge recently served their Expert Witness Disclosures on July 12, 2023 that included a total of about *2,800 new documents* that Defendants need to review prior to taking Plaintiffs' depositions and evaluating what, if any, rebuttal expert witnesses they will disclose." *Id.* The Court extended the expert disclosure deadline

to November 13, 2023. *Id*.

### D. Plaintiff's Deposition and Rebuttal Expert Witness Disclosure Deadline

Defendants promptly reviewed Plaintiff's voluminous records and scheduled Plaintiff's deposition for September 13, 2023. Defendants did not conclude Plaintiff's deposition because Plaintiff had to leave at 6:00 p.m., so the Parties agreed to resume Plaintiff's deposition on October 25, 2023.[3] Cognizant of the approaching rebuttal expert deadline, the Parties submitted a stipulation to the Court, which was granted on October 19, 2023, to extend the expert rebuttal witness disclosure deadline to December 13, 2023. ECF No. 96. The agreed-upon stipulation stated that Defendants "seek additional time for their rebuttal expert witness to be able to review Plaintiff Regge's complete deposition testimony and conduct a psychological examination." *Id*. After Plaintiff's deposition concluded on October 25, 2023, Defendant informed Plaintiff's counsel that they intended to request Plaintiff undergo a Rule 35 exam. **Exhibit 10** at ¶ 12.

### E. Examination of Plaintiff

On October 27, 2023, Defendants' counsel sent Plaintiff a draft stipulation for a Rule 35 examination. **Exhibit 7**. As indicated in the stipulation, Defendant seeks the following:

1. The examination will be conducted by Dr. Lippert in Las Vegas, Nevada, commencing at a date and time that counsel for Plaintiff and counsel for Defendant mutually agree in writing.

2. The examination will start at 9:00 a.m. and last no more than eight (8) hours. Plaintiff will be permitted to take a lunch break and comfort breaks. Plaintiff agrees that she will participate in the examination and any testing in good faith and will not attempt to prevent the examination from being completed within the time agreed upon.

3. The scope of the examination shall be to determine the nature of Plaintiff's mental and/or emotional condition, and the existence, nature, extent and cause of any mental and/or emotional injury of Plaintiff. The examination shall also be conducted

---

[3] Plaintiff advised that she was only available for depositions on Mondays, Wednesdays, and Fridays. Defendants proposed they resume Plaintiff's deposition on September 19, 2023 or October 11, 2023, but Plaintiff's counsel was not available. The Parties ultimately agreed on October 25, 2023.

in such a manner so as to allow Dr. Lippert to form an opinion on the matters at issue in this case, including but not limited to the veracity of Plaintiff's allegations related to this action and the diagnosis and opinions offered by Plaintiff's expert(s), on the nature of her mental and/or emotional condition, and the existence, nature, extent, and cause of any mental and/or emotional injury of Plaintiff.

4. The mental examination will consist of a clinical psychiatric interview including, but not limited to, a personal and social history, educational and work history, medical history (including psychiatric history), and evaluation of the events which Plaintiff claims were the cause of her emotional injury.

5. Dr. Lippert may administer any or all of the following tests: Minnesota Multiphasic Personality Inventory (MMPI-II); Million Clinical Multiaxial Inventory (MCMI-IV), and the Personality Assessment Inventory (PAI).

6. While Dr. Lippert is administering the exam, no other individuals are allowed to be in the exam room or around Plaintiff.

Plaintiff objected on November 3, 2023 and for the first time, said she would not agree to allowing Defendants' rebuttal expert to move forward with an examination of Plaintiff. **Exhibit 10** at ¶ 13. The Parties later had a conferral call on November 6, 2023, during which time Plaintiff's counsel advised that Plaintiff was objecting to the Rule 35 examination because "Dr. Lippert should have been disclosed as an initial expert, not a rebuttal expert." **Exhibit 10** at ¶ 14. If Plaintiff had agreed to the Rule 35 exam, Dr. Lippert would have evaluated Plaintiff in November 2023 and prepared her report before the December 13, 2023 deadline.

III. **LEGAL ARGUMENT**

    A. **Plaintiff Should Submit to a Rule 35 Mental Examination**

Federal Rule of Civil Procedure 35 permits the Court to order a party to submit to a mental examination where (1) plaintiff has placed her mental condition in controversy, and (2) good cause exists for the examination. Fed. R. Civ. P. 35(a). One purpose of the rule is to "level the playing field in cases where physical or mental condition is at issue, because '[a] plaintiff has ample opportunity for psychiatric or mental examination by his/her own practitioner or forensic expert.'"

*Painter v. Aaron Atwood, D.D.S*, Case No. 2:12-cv-01215-JCM-RJJ, 2013 U.S. LEXIS 139403, at *7 (D. Nev. Sept. 26, 2013) (citing *Ashley v. City & Cnty. Of San Francisco*, Case No. CV-12-00045-JST (KAW), 2013 U.S. Dist. LEXIS 77134 (N.D. Cal. May 30, 2013)). The decision whether to order a Rule 35 examination rests in the sound discretion of the trial court. *Schlagenhauf v. Holder*, 379 U.S. 104 (1964).

"[C]ourts will order plaintiff to undergo medical examinations where the cases involve, in addition to a claim of emotional distress, one or more of the following: (1) a cause of action for intentional or negligent infliction of emotion distress; (2) an allegation of a specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or (5) plaintiff's concession that his or her mental condition is 'in controversy' within the meaning of Rule 35(a)." *Turner v. Imperial Stores*, 161 F.R.D. 89, 95 (S.D. Cal. 1995). "Satisfaction of one of the *Turner* factors is sufficient to place a party's mental condition 'in controversy.'" *Gurshin v. Bank of Am.*, Case No. 2:15-cv-323-GMN-VCF, 2016 U.S. Dist. LEXIS 10163, at *2 (D. Nev. Jan. 26, 2016). Moreover, this Court has found that "[h]ospitalization and attempted suicide are manifestations of unusually severe emotional distress." *Id*. In this case, Plaintiff meets <u>*more*</u> than one of the *Turner* factors.

Good cause exists to compel a plaintiff's mental examination where a defendant shows "that the examination could adduce specific facts relevant to the cause of action and necessary to the defendant's case." *Id.* at *4 (citing *Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 609 (C.D. Cal. 1995)). "Factors considered in assessing whether 'good cause' exists include, but are not limited to: (1) the possibility of obtaining desired information by other means; (2) whether plaintiff plans to prove her claim through testimony of expert witnesses; (3) whether the desired materials are relevant; and (4) 'whether plaintiff is claiming ongoing emotional distress.'" *Id*. (citing *Nguyen v. Qualcomm Inc.*, No. 09-1925-MMA (WVG), 2013 U.S. Dist. LEXIS 93826, at* 3 (S.D. Cal. July 3, 2013)).

Plaintiff has clearly placed her mental health condition at issue because, in addition to claiming she suffered *severe* emotional distress, she has pleaded a separate claim for IIED. Plaintiff's expert disclosure also states that several treating providers will testify that Defendants'

actions contributed to Plaintiff's injuries, including her substance abuse, depression, anxiety, and suicidal ideation. This is not a "garden variety" emotional distress case.  Plaintiff seeks to present sixteen (16) doctors to talk about her emotional and mental condition and claims that Defendants caused it, but does not want to allow Defendants to test and ultimately rebut that testimony.

Moreover, Defendants have demonstrated good cause for the examination. Plaintiff identified sixteen (16) treating providers in her expert disclosure who will testify about her emotional distress, ten (10) of whom will offer testimony that Defendants contributed to Plaintiff's substance use, depression, anxiety, and suicidal ideation. Additionally, good cause exists for such an examination because there is no alternative means for Defendants to independently assess the alleged severity of Plaintiff's mental or emotional damages, or the purported causal connection between Plaintiff's alleged mental or emotional damages and her allegations against Defendants. If Defendants are denied the opportunity to examine Plaintiff, Defendants will be severely and unfairly prejudiced in their ability to respond to Plaintiff's allegations. Particularly where, as here, Plaintiff is seeking damages for severe emotional distress and seeks to present sixteen (16) doctors to a jury.

**B.     The Scope of the Examination is Reasonable**

Defendants request that Plaintiff submit to a psychological examination performed by Dr. Lippert, who is a Nevada licensed examiner. **Exhibit 8**. Dr. Lippert is available to conduct the examination in either November or December 2023 and needs up to eight hours to perform the examination. Routinely, courts in this Circuit have found eight-hour examinations to be reasonable. *See Juell v. Forest Pharm., Inc.*, No. S-05-0378 FCD GGH, 2006 U.S. Dist. LEXIS 47226, at *7 (E.D. Cal. July 5, 2006); *Halliday v. Spjute*, No. 1:07-cv-00620-AWI-GSA, 2015 U.S. Dist. LEXIS 85211, at *6-8 (E.D. Cal. June 30, 2015); *Mandujano v. Geithner*, No. C 10-01226 LB, 2011 U.S. Dist. LEXIS 27986, at *18-19 (N.D. Cal. Mar. 7, 2011); *Simonelli v. Univ. of Cal. - Berkeley*, No. C 02-1107 JL, 2007 U.S. Dist. LEXIS 44373, at *9 (N.D. Cal. June 4, 2007).  Additionally, courts have permitted examiners to conduct reasonable testing as the examiner determines is necessary and have explicitly sanctioned the use of the MMPI-II, MCMI

IV, and PAI. *Atwood*, 2013 U.S. LEXIS 139403, at *5; *Ashley*, 2013 U.S. Dist. LEXIS 77134, at *13, *Juell*, 2006 U.S. Dist. LEXIS 47226, at *7.

### C. Dr. Lippert is a Proper Rebuttal Witness

Plaintiff's argument that Dr. Lippert is an improper rebuttal expert witness, and therefore Plaintiff should not undergo a Rule 35 Examination, is misplaced. At this stage in the case, the court is "not admitting or excluding evidence," rather it is "managing discovery to prepare the parties' action for trial." *Slagowski v. Cent. Wash. Asphalt*, Case No. 2:11-00142-APG-VCF, 2014 U.S. Dist. LEXIS 89323, at *7 (D. Nev. Jul. 1, 2014) (finding that whether a rebuttal expert report is admissible should be decided immediately before trial). However, even if this issue were ripe, which Defendants deny, Dr. Lippert is an appropriate expert rebuttal witness.

Rebuttal expert testimony is "intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii). "The function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party." (internal citations omitted). *Downs v. River City Group, LLC*, 2014 U.S. Dist. LEXIS 26056, *7 (D. Nev. Feb. 28, 2014). "Rebuttal expert reports are proper if they contradict or rebut the subject matter of the [original] expert report." *United States EEOC v. Mattress Firm, Inc.*, Case No. 2:13-cv-1745-GMN-VCF, 2016 U.S. Dist. LEXIS 17048, at *10 (D. Nev. Feb. 11, 2016). "As long as a defendant's rebuttal expert witnesses speak to the same subject matter the initial experts addressed and do not introduce novel arguments, their testimony is proper under Federal Rule of Civil Procedure 26(a)(2)(C) and related case law from District Courts in this circuit." *Laflamme v. Safeway, Inc.*, Case No. 3:09-cv-00514-ECR-VPC, 2010 U.S. Dist. LEXIS 98815, at *5 (D. Nev. Sept. 2, 2010).

Dr. Lippert will provide testimony and prepare a report to rebut and disprove Plaintiff's assertion that Defendants' conduct caused or contributed to her emotional distress, including her substance use, depression, anxiety, and suicidal ideation. Her report will address the same subject matter as Plaintiff's experts' reports (Plaintiff's mental condition) and the same issues as Plaintiff's experts' reports (whether Plaintiff's alleged mental conditions are related to Defendants' alleged

actions). Her testimony, therefore, falls squarely within the scope of Rule 26(a)(2)(C) rebuttal witness. Plaintiff is simply making assumptions about a report that does not yet exist.

Moreover, at the time of the Parties' mutual July 12, 2023 initial expert disclosure deadline, Plaintiff had not yet been deposed. When Plaintiff served her expert disclosure and Second Supplement to Initial Disclosure on July 12, 2023, she identified sixteen (16) expert witnesses, including *twelve (12) new* treating providers and over *2,600 pages* of medical records which she had in her possession for months, which would have been responsive to Defendants' discovery and that related to Plaintiff's mental condition. After Defendants received Plaintiff's medical records, they diligently worked to review Plaintiff's records and scheduled her deposition. Defendants were simply unable to properly evaluate whether to retain rebuttal expert witnesses until after Plaintiff filed her expert disclosure and produced 2,600 pages of medical records, and Defendants had an opportunity to depose Plaintiff.

**D.** Defendant anticipates Plaintiff will point to *Wilson v. Wal-Mart Stores, Inc.*, Case No. 2:15-cv-1791-RCJ-VCF, 2016 U.S. LEXIS 37106 (D. Nev. Mar. 21, 2016), a personal injury case, in alleged support of her position that Dr. Lippert is not a proper rebuttal expert. But the rebuttal expert in the *Wilson* case proposed an alternative theory of the plaintiff's cause of injuries, which is the *sine qua non* of a personal injury action. Moreover, the rebuttal expert only reviewed portions of the plaintiff's medical records and did not review medical examinations. In contrast, Dr. Lippert's opinion will rebut and disprove Plaintiff's experts' assertions that Defendants' conduct contributed to her severe emotional distress – injuries she claims are beyond "garden variety." **Prohibiting the Rule 35 Examination is Not an Appropriate Remedy**

Even if this Court were to determine that Dr. Lippert does not qualify as a rebuttal expert witness, it still must determine whether Defendants' alleged violation of a discovery deadline was either substantially justified or harmless. *See* Fed. R. Civ. P. 37(c)(1). The Ninth Circuit has outlined several factors for the Court to consider when determining whether a violation of the expert discovery rules was harmless, including: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption

of the trial; and (4) bad faith or willfulness involved in not disclosing the evidence." *Lanard Toys, Ltd. V. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010). "Harmlessness may be established if a disclosure is made sufficiently before the discovery cut-off date to give the opposing party sufficient time to conduct discovery." *Amos v. Makita U.S.A.*, Case No.: 2:09-cv-01304-GMN-RJJ, 2011 U.S. Dist. LEXIS 158103, at *5 (D. Nev. Jan. 6, 2011).

Defendants' conduct is substantially justified and there is no harm to Plaintiff. As explained above, Plaintiff disclosed 2,600 pages of medical records the *same day* she served Defendants with her expert disclosures naming sixteen (16) providers. Plaintiff also did not designate any of the medical providers she disclosed *before* July 12, 2023 as persons who would testify regarding the causation of her mental condition. After Defendants received Plaintiff's medical records, they quickly worked to review the records and scheduled Plaintiff's deposition for September 13, 2023. After Plaintiff's deposition concluded on October 25, 2023, Defendants immediately asked Plaintiff to submit to a Rule 35 Exam and provided a draft stipulation to Plaintiff's counsel on October 27, 2023. Defendants were unable to ascertain whether they needed a rebuttal expert witness until they reviewed Plaintiff's records and completed her deposition. Once Defendants completed those tasks, they immediately requested a Rule 35 exam. Plaintiff should not be allowed to use her blatant attempts to avoid or delay discovery to prevent Defendants from taking measures to defend their case.

Plaintiff will also not suffer any prejudice. Plaintiff should not be surprised by Defendants' request for a psychological examination because she has pleaded a separate IIED claim and is claiming $250,000 in emotional distress damages. Moreover, as evidenced by the July 25, 2023 Order Granting Stipulation to Extend Discovery Deadlines, where the Parties mutually agreed to extend the rebuttal expert disclosure deadline, Plaintiff knew that Defendant intended to disclose an expert to rebut the Plaintiff's testimony about her mental condition. *See* ECF No. 89. Plaintiff also still has time to depose Dr. Lippert and conduct any additional discovery. Any prejudice to Plaintiff can easily be cured by allowing the deposition of Dr. Lippert once she has evaluated Plaintiff and completed her report. Finally, Defendant has not acted in bad faith.

## IV. CONCLUSION

For all the above reasons, Defendants respectfully request the Court order Plaintiff to undergo a Rule 35 examination pursuant to the terms identified in the proposed order Attached in **Exhibit 9**.

Dated this 27th day of November 2023.

JACKSON LEWIS P.C.

*/s/ Kathleen C. Shea*
Kirsten A. Milton, NV State Bar No. 14401
300 S. Fourth Street, Ste. 900
Las Vegas, Nevada 89101

Katheen C. Shea, FL State Bar No. 0102837
390 N. Orange Avenue, Ste. 1285
Orlando, Florida 32801
*Appearing Pro Hac Vice*

Attorneys for Defendants
*Wyndham Vacation Ownership, Inc.
and Demetrius Barnes-Vaughn*

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee Jackson Lewis P.C. and that on this 27th day of November 2023, I caused to be sent via ECF filing, a true and correct copy of the above and foregoing **DEFENDANTS' MOTION TO COMPEL MENTAL EXAMINATION OF PLAINTIFF WENDY REGGE** properly addressed to the following:

Jill Garcia, NV Bar No. 7805
jgarcia@hone.law
Kelly B. Stout, NV Bar No. 12105
kstout@hone.law
Hone Law
701 N. Green Valley Parkway
Suite 200
Henderson, NV 89074
Telephone: 702-608-3720
Fax: 702-608-7814

*Attorneys for Plaintiffs*

 */s/ Janet Herrera*
Employee of Jackson Lewis P.C.

4890-4675-6239, v. 4